Crystal **KIRKPATRICK**, Petitioner,

v.

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS, Respondent.**

**No. 96–AA–326.**

District of Columbia Court of Appeals.

Argued Nov. 21, 2001.

Decided Dec. 13, 2001.

---

John F. Pressley, Jr., Washington, DC, for petitioner.

Sheila Kaplan, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before STEADMAN, SCHWELB and REID, Associate Judges.

REID, Associate Judge:

This case, which comes to us after three remands to the agency at the request of the parties, involves a challenge to a decision of the District of Columbia Public Schools ("the DCPS") requiring a non-resident mother to pay tuition for her daughter, even though, through a mutual oral agreement made at the time of their divorce, the mother shared joint custody of her daughter with the child's natural father, a District resident. Because there are inconsistent findings and credibility determinations by the first and second hearing officers, and because the agency has not interpreted applicable statutory and regulatory provisions in the first instance, we again remand this matter to the agency, with specific instructions to fashion a determination which responds to the specific questions set forth at the end of this opinion.

## FACTUAL SUMMARY

This case has had a prolonged existence. The record on review shows that the mi-

nor daughter of petitioner Crystal Kirkpatrick, a resident of Maryland, and Jose Moris Gutierrez, a resident of the District of Columbia, attended a District elementary school in the school years September 1993 to June 1996.[1] In December 1995, following investigation of an anonymous tip, the DCPS advised Ms. Kirkpatrick that tuition payments in the amount of $14,255.00 were due and owing for her daughter. On February 26, 1996, after a January 1996 hearing, which Mr. Gutierrez did not attend, officer Leonard G. Pinkney determined that the "DCPS did not prove by a preponderance of the evidence, that Ms. Crystal Kirkpatrick owes DCPS $14,255.00 for [her daughter's] attendance and enrollment in DCPS." In reaching this determination, Mr. Pinkney stated: "The testimony of Ms. Kirkpatrick, the Student Residence and Data Verification Form, and the memorandum on the issue of parental residency for parents residing in the District of Columbia and Maryland are credible and persuasive."[2] Thus, based upon Ms. Kirkpatrick's testimony and other evidence introduced at the hearing, including a Thaddeus Stevens Elementary School questionnaire and the Student Residence and Data Verification Form, which listed the child's address as 1818 Vernon Street, N.W., Mr. Pinkney "presumed that

[the child] may have spent 50% of her time with each parent," in accordance with a mutual and private oral "joint custody" agreement entered into when the parents were divorced.[3] With respect to the actual sum owed by Ms. Kirkpatrick, Mr. Pinkney concluded, somewhat ambiguously, that:

1. The tuition assessed ($2,643.00) for the second semester of the 1993–94 school year is denied;

2. The tuition assessed ($5,564.00) for the 1994–95 school year is reduced to $2,782.00 owed;

3. The tuition assessed ($6,048.00) for the 1995–96 school year should be reduced to $3,024.00 if [the child] completes the entire school year in DCPS. If not, the amount should be prorated then divided in half to determine the amount owed.

Thus, the exact amount owed by Ms. Kirkpatrick was subject to further calculations.

Ms. Kirkpatrick appealed the hearing officer's determination to the Superintendent of the DCPS, arguing that the DCPS rules did not require that her daughter be under the "*sole* custody or control of the parent who reside[s] in the District of Columbia" (emphasis in original). The Superintendent, relying on the rationale of

---

1. In a memorandum dated April 1, 1996, from the Acting Director of the DCPS Office of Educational Accountability, Nonresident Tuition Enforcement Branch, the Principal of Stevens Elementary School was instructed to exclude Ms. Kirkpatrick's daughter from the school upon receipt of the memorandum, because of her failure to pay "the required nonresident tuition."

2. Mr. Pinkney referred to "the Student Residence and [D]ata Verification Form dated 9/24/95" which Mr. Gutierrez apparently signed, and to an "Emergency Contact sheet" which Ms. Kirkpatrick signed. The "memorandum on the issue of parental residency for parents residing in the District of Columbia and Maryland" was a June 22, 1989, memo-

randum, whose author is not indicated, entitled: "Response to Non-resident Tuition Requirements." The memorandum stated: "[F]rom judicial experience ... 50% of the tuition charges would be assessed because the child would spend as much time with one parent as the other. This has been the decision of the District Courts in a similar case litigated where no custody decree was in effect." The memorandum does not specify the name of the case.

3. Ms. Kirkpatrick and Mr. Gutierrez were divorced in 1991. Ms. Kirkpatrick moved from the District to Capitol Heights, Maryland in 1994.

the hearing officer, Mr. Pinkney, denied her appeal on March 8, 1996, and stated that she owed $8,449.00.[4] Ms. Kirkpatrick filed a timely petition for review in this court on March 22, 1996.

As a result of the District's November 25, 1996, motion, the record was remanded to the DCPS. The District requested the remand so that the DCPS could explain the reason for the assessment of only "one-half of the tuition to the out-of-state parent."[5] In response to the remand, Mr. Pinkney clarified his determination, and then amended his clarification, on November 6, 1997, and January 13, 1998,[6] stating in part that:

1. Mr. Jose M. Gutierrez does not provide care, custody and substantial support for his daughter....

2. Mr. Gutierrez failed to appear at the hearing and provide testimony that would have corroborated Ms. Kirkpatrick's testimony regarding the custodial arrangement for [his daughter's] care, custody and support, ... and to rebut the inference that [his daughter's] residence with [him] during the school year is bogus.

3. The testimony given by the investigator (Mr. Hester) regarding his findings on his visit to the home during the morning hours of January 26, 1996 and

his telephone call to the home on January 29, 1996 weighted heavily on the issue whether [the child] actually resided [with her father] full time during the school year.... The Hearing Officer also concluded that if she had been residing with her father on a full time basis, it would have been very unlikely that she would only maintain one (1) dress for clothing at her place of abode....

Mr. Pinkney determined that:

[T]uition was owed to the DCPS for [the child's] attendance at Stevens Elementary School for the school year 1994–95 and 1995–96. No tuition was assessed for the school year 1993–94 because both parents resided in the District of Columbia during the school year.

The determination that no tuition would be assessed for 1993–94 conflicted with the Superintendent's apparent understanding of Mr. Pinkney's 1996 determination. Mr. Pinkney further declared that: "The intent of the D.C. Nonresident Tuition Act allows a student who resides *full time* in the District [ ] to attend a D.C. public school free of charge if the student has a parent or 'court-appointed' guardian or 'court-appointed' custodian physically residing in

4. The Superintendent of the DCPS apparently arrived at this sum by assessing $2,643.00 for the school year, 1993–94; $2,782.00 for 1994–95; and $3,024.00 for 1995–96.

5. The District asserted:

As we read the statute, if the parent residing in the District does not supply "care, custody, and substantial support," the nonresident parent could be entirely liable for the tuition in question (although the Board could, perhaps, reduce this burden as a matter of discretion). See D.C.Code § 31–602(b). However, it is unclear what the Board's regulation means in this context. If it means that the parent resident in the District must only exercise substantial "cus-

tody and control," it is not clear why the non-custodial parent here is liable for any tuition. On the other hand, if the regulation means that the non-District parent is liable for tuition to the extent that the District resident parent is not exercising custody and control, neither decision below so states, *nor relates that conclusion to the statute.*

6. The November 6th and January 13th documents are not included in the record. Our summary of them is taken from a subsequent hearing officer's decision, which provided a background summary of the case.

the District . . . ." (emphasis in original).[7] Mr. Pinkney added a finding that Mr. Gutierrez' daughter "was not a full time resident of the District during the school years 1994–95 and 1995–96," and that consequently, "Ms. Crystal Kirkpatrick was assessed non-residential tuition for [her daughter's] attendance in DCPS." The exact amount of the tuition owed as a result of Mr. Pinkney's clarification is not clear from the documents available on review.

After the record was returned to this court, the District again filed a motion to remand the matter to the DCPS. The record was remanded on November 12, 1998. On the second remand, a hearing took place before Hearing Officer Betty Underdue, Esq. on February 9, 2000. Both Ms. Kirkpatrick (now Crystal Morse) and Mr. Gutierrez gave testimony. The Director of the DCPS' Student Residency Office was present but did not give testimony; however, Ms. Underdue relied on testimony given by Mr. Richard Hester, an investigator of the DCPS' Non Resident Tuition Enforcement Branch during the 1996 hearing.[8] Ms. Underdue found that neither D.C.Code § 31–602 (1995), nor the rules of the District's Board of Education, nor " 'applicable case law' . . . required a finding of whether a child/student resides in the District [ ] 'part-time' or 'full-time' in determining whether he or she qualifies for a free education in the [District]." She stated that:

The criteria is whether the student has a parent or legal guardian residing in the District of Columbia who supplies care, custody and substantial support to him or her, and whether the child "resides" with that parent or guardian.

Ms. Underdue noted that DCPS "[did] not dispute [the parents'] claim" that they have "joint custody" of their daughter. However, she concluded that: "the evidence in the record—from both hearings does not support a finding that [the child] resided in [the District] during the period claimed." As support for this conclusion, and contrary to Hearing Officer Pinkney's assessment of Ms. Kirkpatrick's (Morse's) credibility, Ms. Underdue discredited the mother's testimony, and also that of Mr. Gutierrez. Furthermore, she declared that the discovery of only one child's dress at Mr. Gutierrez' residence "did not support a finding that this child resided in the District . . . approximately five (5) days a week, nine months a year for two consecutive years"; and that "Ms. Morse is the parent who claims [the child] as a dependent."

As to the amount of tuition owed by Ms. Kirkpatrick (Morse), Ms. Underdue disagreed with Mr. Pinkney, concluding that:

Based upon the additional findings of facts, the Hearing Officer concludes that DCPS proved, by a preponderance of the evidence, that the parents of [the child] owe non-resident tuition to DCPS

7. The basis for this decision evidently was the memorandum mentioned in his 1996 determination, and identified in Mr. Pinkney's clarification as an "undated memorandum from [then] Superintendent Jenkins to the D.C. Board of Education's Research, Planning and Evaluation Committee."

8. According to Mr. Hester's January 29, 1996, testimony, a DCPS investigator visited Mr. Gutierrez' residence on January 26, 1996, at 7:45 a.m. and did not find the child. Mr. Gutierrez stated that the child was with her mother. "Mr. Gutierrez showed the investigator one outfit in the closet and pointed to some toys on the floor that he said belonged to [his daughter]." Mr. Hester also testified that an investigator called Mr. Gutierrez on the morning of January 29, 1996 to ask if his daughter "was there." Mr. Gutierrez said she was "with her (sic) sister." These were the only contacts with Mr. Gutierrez' residence mentioned by the DCPS investigator during the affected period, 1993 to 1996.

for [the child's] enrollment in DCPS for the second half of the 1993–94 school year, all of the 1994–95 school year, and the 1995–96 school year from the commencement of that school year until the time the student was withdrawn from DCPS during the school term.

Thus, Ms. Underdue determined that "the parents," not solely Ms. Kirkpatrick (Morse), owed the full amount of tuition for the entire period in question.[9]

After the record was returned to this court, it was once again remanded, this time at the request of the petitioner, to the DCPS on October 11, 2000, to determine whether Mr. Gutierrez was a resident of the District at the time his daughter was enrolled in the DCPS. On November 16, 2000, Ms. Underdue issued a remand decision, declaring in part that: "[T]he residency of the student's father ... was never in question or dispute in this case"; that in fact he was a resident of the District, but that: "[T]he student resided with her mother outside of [the District] during [the questioned] period and it was the mother who had custody and control of [the child] during the subject time." In response to Ms. Underdue's decisions, the District filed supplementary records on remand, and Ms. Kirkpatrick submitted a reply brief to this court.

## ANALYSIS

Ms. Kirkpatrick (Morse) mainly contends that: (1) her daughter was not required to be a resident of the District to avoid tuition payments; (2) she and Mr. Gutierrez, who is a resident of the District, share joint custody of their child; and (3) in essence, the DCPS erred in interpreting the requirements of law governing tuition payments. The District argues that the DCPS decision to impose tuition payments for the school years in question is supported by substantial evidence in the record, and that a child who resides in Maryland with her parent, as parent is defined in D.C.Code § 31–604(5), "[is] not in the custody or control of her father." Furthermore, the District argues, when the DCPS investigator visited Mr. Gutierrez' place of residence on two school mornings, the child was not there and "none of her belongings were visible in the apartment and there was no indication of where she slept."

To begin our consideration of this matter, we first set forth the applicable statutory and regulatory provisions. D.C.Code § 31–602(a) (1998), recodified at § 38–302(a) (2001), provides in pertinent part that:

In the case of: ... (2) each child who attends [ ] a public school and does not have a parent or guardian who resides in the District of Columbia, ... there shall be paid to the State Education Office the amount fixed by the State Education Office pursuant to subsection (b) of this section.

Section 31–602(b), recodified at § 38–302(b) specifies in relevant part: "The amount which shall be paid with respect to each person subjection to subsection (a) of this section shall be fixed by the State Education Office as the amount necessary to cover the expense of tuition and cost of textbooks and school supplies used by such person. . . . " Under § 31–604(5) (1998), recodified at § 38–304(5) (2001):

The term "parent" means a person:

(A) Who:

(i) Is a natural parent of a child;

(ii) Is a stepfather or stepmother of a child; or

9. Even though Ms. Underdue stated that "the parents" owed the non-resident tuition payments, the record reveals no demand made upon Mr. Gutierrez.

(iii) Has adopted a child; and

(B) Who has custody or control of such child.

Implementing regulations at 5 DCMR § 2000.2 (1997) state in pertinent part:

A student under eighteen (18) years of age who is otherwise eligible for admission to the D.C. Public Schools shall be admitted without payment of non-resident tuition if and only if the student qualifies for free instruction under one of the following categories:

(a) A student who is in the custody or control of a parent or court-appointed guardian (or custodian) who is a resident of the District of Columbia.

"Parent" is defined in 5 DCMR § 2099 as: "[A] person who has custody or control of a student and whose legal relationship to the student is that of a natural parent, step-parent, or parent by adoption." And, "Residence of a minor student" is defined, in relevant part, in 5 DCMR § 2099 as: "(a) The address of the residence of the student's parent or guardian who has custody or control of the student. . . ." This case requires an interpretation of these statutory and regulatory provisions in the context of its factual setting.

Our standard of review of an administrative agency's decision has been set forth in *Franklin v. District of Columbia Dep't of Employment Servs.*, 709 A.2d 1175 (D.C. 1998) (Steadman, J., dissenting):

An agency's findings of fact and conclusions of law must be affirmed if they are supported by substantial evidence. *District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C.1996). We will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record. *Oubre v. District of Columbia, Dep't of Employment Servs.*, 630 A.2d 699, 702 (D.C.1993). Although we are vested with the final authority on issues of stat-

utory construction, *Harris v. District of Columbia Worker's Compensation (DOES)*, 660 A.2d 404, 407 (D.C.1995), [w]e must defer to an agency's interpretation of the statute which it administers . . . so long as that interpretation is reasonable and consistent with the statutory language. *Davis, supra*, 685 A.2d at 393 (quoting *Taggart–Wilson v. District of Columbia*, 675 A.2d 28, 29 (D.C. 1996)).

*Id.* at 1176 (internal quotation marks omitted). *See also Robinson v. Smith*, 683 A.2d 481, 487 (D.C.1996). Under our standard of review, we perceive at least two problems with the posture of this case, as it is now before us.

 First, we affirm an agency's findings of fact and conclusions if they are supported by substantial evidence in the record. In this case, however, we are presented with inconsistent findings by the first and second hearing officers; inconsistent assessments of the mother's credibility; and findings by the second hearing officer that are not supported by the record. The first hearing officer concluded that Ms. Kirkpatrick (Morse) owed only a portion of the tuition demanded; and the second hearing officer declared that she owed the full amount. The first hearing officer described Ms. Kirkpatrick (Morse) as "credible" and her testimony as "persuasive." The second hearing officer found the testimony of both Ms. Kirkpatrick (Morse) and Mr. Gutierrez to be incredible. Ms. Underdue discredited Ms. Kirkpatrick's (Morse's) testimony essentially because she concluded that Ms. Kirkpatrick (Morse) "could not give the full address for either location" where Mr. Gutierrez resided, and because she "reduced" the time her daughter spent with her each year "while she attended school in [the District]" from 45%/50% at the first hearing to 25% at the second hearing. These

conclusions are questionable based upon our review of the record.[10] Ms. Underdue discredited Mr. Gutierrez' testimony, rejecting his assertion that "he did not show more possessions [to the DCPS investigator on January 26, 1996] ... because he did not understand English well." As Ms. Underdue put it: "[I]f Mr. Gutierrez understood enough English to show [his daughter's] one dress and toys, he understood that the investigator was asking to see evidence that [his daughter] lived with him, and he could have shown more of her possessions and presence there if there were more to show." [11] Mr. Gutierrez, who has worked as a waiter for Marriott,

described his own command of English as "not too—too good."

The inconsistencies between the findings and credibility determinations of the first and second hearing officers are quite significant. As we said in *Braddock v. Smith*, 711 A.2d 835 (D.C.1998): "The credibility of [appellant's] testimony affects our review of the issue of evidentiary sufficiency. Furthermore, it may impact upon the ultimate legal question of statutory interpretation." *Id.* at 839.

The second problem we are confronted with in applying our standard of review to this case is that we generally defer to the

10. When Ms. Kirkpatrick (Morse) was asked on direct examination at the February 2000 hearing where Mr. Gutierrez lived in 1993, she responded: "1840—It was on Vernon Street, because it was right down from my nephew's house. I can't recall the address, but I know it's on Vernon Street, and I know exactly where it was." She also stated that the Vernon Street residence was located in the Northwest quadrant of the District. At that time, Mr. Gutierrez lived at 1818 Vernon Street, N.W. Later, when Ms. Underdue, asked Ms. Kirkpatrick (Morse) where Mr. Gutierrez moved in 1994, she responded: "It was right off Jefferson Street. It's like 50—53rd—It's upper Northwest, right off of Jefferson Street—53—." Still later, during rather extensive questioning by Ms. Underdue, Ms. Kirkpatrick (Morse) stated: "I remember where he lives." When Ms. Underdue asked: "What address did he live [at] after Vernon," Ms. Kirkpatrick (Morse) replied: "After Vernon? He lived at 5320—8th Avenue, Apartment—" Ms. Underdue interrupted, questioning the existence of an avenue in the District. Ms. Kirkpatrick (Morse) then stated: "Eighth Street? Eighth Street. Eighth Avenue, Eighth Street. I know exactly where it's at. It was—He was in apartment 102. And now he's in apartment 107." The record shows that Mr. Gutierrez moved from the Vernon Street address to 5320 8th Street, N.W. in upper Northwest, living first in Apartment 102, and then Apartment 107.

The record reflects that Ms. Kirkpatrick (Morse) had some difficulty understanding and responding to Ms. Underdue's efforts to

determine the percentage of time Ms. Kirkpatrick's (Morse's) daughter spent with her during the school year. As Ms. Underdue's questioning on this subject drew to a close, the following exchange took place:

HEARING OFFICER UNDERDUE: So okay, is it fair to say that because—based upon your testimony that [the child] stayed with her father during the entire week and went to school—No, [counsel for the parents], you will not do percentages for her. I'm asking the question, right? Okay. How much time during the school year did she stay with you?

THE WITNESS: Me?

HEARING OFFICER UNDERDUE: Yes.

THE WITNESS: I would say less than 50 percent because, I mean it has to be like 25 percent, 30 percent.

HEARING OFFICER UNDERDUE: Okay.

THE WITNESS: Or 40—I mean, if you want me to take a guess at the—

HEARING OFFICER UNDERDUE: No, no, that's okay. So you're telling me that during the school year, with the exception of the weekends and some holidays—

THE WITNESS: Uh-huh.

HEARING OFFICER UNDERDUE: —she resided with Mr. Gutierrez. . . .

11. Ms. Underdue added: "The Hearing Officer finds it important to note that while Mr. Gutierrez does not speak English fluently, he evidently understands the language very well, as evidenced by his unsolicited responses to questions posed to Ms. Morse, who did not readily respond to most questions."

agency's interpretation of the statute it administers. However, in this case, despite three remands, the DCPS has yet to take a position regarding the application of the pertinent statutory and regulatory provisions identified above to this case. The situation presented here, where one parent lives in the District and another in an adjoining state, must be a common one after a divorce takes place or if the parents are unwed. Joint custody is the presumption in the District, D.C.Code § 16–911(a)(5) (2001), and it would hardly be surprising, as may be the case here, for a child to divide his or her time to a greater or lesser degree between the two parents. The position of the DCPS with respect to responsibility, if any, for nonresident tuition under the applicable statutes and regulations should be made clear and unequivocal so that the parents may plan accordingly.

■■■■ As we have emphasized previously, review of the merits of an agency case, including the interpretation of applicable statutory and regulatory provisions "is best left to the Superintendent [of the DCPS] in the first instance." *See Zollicoffer v. District of Columbia Pub. Schs.*, 735 A.2d 944, 945 n. 2 (D.C.1999). Such agency determinations moreover, must "reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations, each of which has substantial support," *Munson v. Dep't of Employment Servs.*, 721 A.2d 623, 626 (D.C.1998) (citation omitted), and the record must provide evidence that the agency "considered the language, structure, or purpose of the statute when selecting an interpretation," *Sibley Mem'l Hosp. v. Dep't of Employment Servs.*, 711 A.2d

105, 108 (D.C.1998) (citation omitted). *See also Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 899–900 (D.C.1995) ("It would be incongruous to accord substantial weight to an agency's interpretation of a statute where the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure and purpose of the provisions which were ostensibly being construed.").

Given the problems with the posture of the case now before us, we are constrained to remand this case to the agency with instructions to respond to the following questions, among any others that may require examination to completely dispose of this case:

1. How should the applicable statutory and regulatory provisions set forth above be interpreted for the purpose of assessing, or not assessing, tuition in this case, in view of the joint custody arrangement of the parents, which the DCPS "does not dispute?"

2. What does the word "custody" mean for the purposes of the applicable statutory and regulatory provisions, given the different types of custody in law; e.g., physical custody, legal custody, joint custody, sole custody, etc. And, what does the alternative "or control" mean and how does it affect the analysis? [12]

3. Has the District sustained its burden of proof to show by a preponderance of the evidence that Ms. Kirkpatrick (Morse) owes tuition for the second semester of the 1993–94 school year and the 1994–95 and 1995–96 school years? [13]

---

12. *See Clyburn v. District of Columbia*, 741 A.2d 395 (D.C.1999); *Ysla v. Lopez*, 684 A.2d 775 (D.C.1996); *In re L.E.J.*, 465 A.2d 374 (D.C.1983).

13. Our review of the record shows that there may be some confusion as to whether the DCPS or Ms. Kirkpatrick (Morse) bears the burden of proof in this matter. *See Braddock,*

4. In light of the applicable legal principles as interpreted by the agency, what precisely are the agency's factual findings?

Accordingly, for the foregoing reasons, we remand this case to the agency for further proceedings consistent with this opinion.

*So ordered.*

*supra:* "It is at least arguable that while the parent may be the 'proponent' where the hearing is to determine the parent's *present* residency status for purposes of deciding whether the child may enroll at a District school, the District is the 'proponent' when the effort is to establish the parent's liability for allegedly past due non-resident tuition." 711 A.2d at 838 n. 6. On remand, the District should take a definitive position on the respective burdens of proof in contested residency cases and with respect to which specific factual issues.