*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CV-1123

JUDY COFIELD, *et al*., APPELLANTS,

V.

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, *et al*., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(2016-CA-006119-P(MPA))

(Hon. John M. Mott and Robert R. Rigsby, Trial Judges)

(Argued September 12, 2019                    Decided June 15, 2023)

*Stephen C. Leckar*, with whom *David Wachtel* was on the brief, for appellants.

*Holly M. Johnson*, Assistant Attorney General at the time the brief was filed, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Loren L. Alikhan*, Solicitor General at the time the brief was filed, *Caroline S. Van Zile*, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellee District of Columbia Office of Contracting and Procurement.

*Lasheka Brown Bassey* filed a Statement in Lieu of Brief for appellee District of Columbia Office of Employee Appeals.

Before RUIZ, FISHER,[*] and THOMPSON,[**] *Senior Judges*.

RUIZ, *Senior Judge*: Appellants, Judy Cofield and Sarinita Beale, challenge a decision of the District of Columbia Office of Employee Appeals (OEA) upholding the elimination of their positions with the District of Columbia Office of Contracting and Procurement (OCP) as part of a reduction in force (RIF). Appellants contend that (1) their terminations were improper because they were placed into single-person retention registers based on positions they did not officially occupy in violation of the regulations governing RIFs, and (2) this action deprived them of their right to compete for other positions if they had been placed on their proper (non-single) retention register. Appellants also allege that the purported RIF was a pretextual adverse action. Appellant Beale contends that OEA erroneously declined, on jurisdictional grounds, to consider her claim to priority reemployment. We affirm in part and reverse in part. We uphold appellants' RIF terminations and remand for a determination by OEA in the first instance as to whether it has jurisdiction over appellant Beale's priority reemployment rights claim.

---

[*] Senior Judge Fisher was an Associate Judge of the court at the time of argument. On August 23, 2020, he began his service as a Senior Judge.

[**] Senior Judge Thompson was an Associate Judge of the court at the time of argument. On February 18, 2022, she began her service as a Senior Judge.

# I. Background

## A.    The D.C. Comprehensive Merit Personnel Act

The District of Columbia Comprehensive Merit Personnel Act (CMPA) guarantees certain benefits to District employees "relating to appointments, promotions, discipline, separation, pay, unemployment compensation, health, disability and death benefits, leave, retirement, insurance, and veterans preference." D.C. Code § 1-601.01(2). The CMPA provides two mechanisms by which the District can conduct a RIF: (1) the general RIF statute, *id.* § 1-624.01; and (2) the Abolishment Act, *id.* § 1-624.08.[1] Relevant to this appeal, under both RIF statutes, an employee who is slated for termination is entitled to one round of lateral competition for positions within their competitive level and priority reemployment consideration if they are separated. *Id.* § 1-624.02(a)(2)-(5) (general RIF Act); *Id.* § 1-624.08(d)-(e), (h) (Abolishment Act).[2]

---

[1] The Abolishment Act "affords District of Columbia agencies an opportunity each fiscal year to use a streamlined procedure to abolish positions that they have identified before February 1 of the fiscal year, without regard to whether there is a fiscal emergency or budget crisis." *Stevens v. D.C. Dep't of Health*, 150 A.3d 307, 316 (D.C. 2016).

[2] "The general RIF statute 'embod[ies] broader RIF procedures than those found in the Abolishment Act[.]'" *Stevens*, 150 A.3d at 312 (alterations in original)

4

When lateral competition occurs, under either the general RIF statute or the Abolishment Act, an employee who occupies a position slated for abolishment competes for retention with other employees in the same competitive area and level. 6-B D.C.M.R. § 2412.2. An employee's competitive area generally consists of the entire agency to which they are assigned, *id.* § 2409.1, but it may consist of a smaller ("lesser") organizational unit within the agency. *Id.* § 2409.3.[3]

Within each competitive area are competitive levels. *Id.* § 2410.4. Competitive levels are assigned based on an employee's "position of record," *id.* § 2410.2, and include employees "in the same grade . . . and classification series and which are sufficiently alike in qualification requirements, duties, responsibilities,

---

(quoting *Washington Tchrs.' Union, Local #6 v. D.C. Pub. Schs.*, 960 A.2d 1123, 1134 (D.C. 2008)).

[3] Under 6-B D.C.M.R. § 2409.3:

> An agency head may request that the personnel authority establish lesser competitive areas by submitting a written request that includes the following:
>
> (a) a description of the proposed competitive area or areas which includes a clearly stated mission statement, the operations, functions, and organizational segments affected;
> (b) an organizational chart of the agency which identifies the proposed competitive areas; and
> (c) a justification for the need to establish a lesser competitive area.

and working conditions so that the incumbent of one (1) position could successfully perform the duties and responsibilities of any of the other positions." *Id.* § 2410.4. "An employee's position of record is the position for which the employee receives pay or the position from which the employee has been temporarily reassigned or promoted on a temporary or term basis." *Id.* § 2410.3; *see also District of Columbia v. King*, 766 A.2d 38, 45 (D.C. 2001) ("[An employee's] competitive level must be based on his official position of record."). "The fact that an employee may have been detailed to a different position at the time of his or her RIF does not change the fact that the establishment of the employee's competitive level is based on the official position description." *King*, 766 A.2d at 45.

An employee may be in a single-person competitive area if that employee is the only person at her competitive level. Where an employee is placed in a single-person competitive area, "there is no one against whom . . . she [can] compete, and therefore . . . the one-round-of-lateral-competition requirement . . . is inapplicable." *Stevens*, 150 A.3d at 323-24. Central to this appeal is whether appellants were properly RIF'd from their respective positions of record, which the agency determined were single-person competitive areas.

## B.  Factual and Procedural Background

Following the 2008 nationwide recession, the District of Columbia experienced economic distress.  Due to an anticipated budget shortfall, the Office of the City Administrator informed District agencies, including OCP, that they would need to reduce their budgets.  In response, OCP's then-Chief of Staff, Wilbur Giles, directed his senior managers to identify "existing inefficiencies and redundancies" in their divisions.  The senior managers recommended six positions for abolishment, including appellants' positions.  At the time of the RIF, Cofield was a grade 11 Staff Assistant in the Office of the Assistant Director for Procurement, and Beale was a grade 12 Program Analyst in the Office of Procurement Support.  Appellants were served with separation notices on April 20, 2009, and separated from OCP on May 22, 2009.

In June 2009, appellants contested the abolishment of their positions in a consolidated action before an OEA administrative judge (AJ).  The AJ held a four-day hearing in May 2012, at which appellants challenged their terminations, asserting that the RIF at OCP was a pretextual adverse action targeted at them.  Beale argued she was selected for termination so that an agency manager, Sharon Kershbaum, could hire a family friend, Chelsea Lisbon, to work at OCP.  Cofield

claimed that she too had been selected for termination so that a higher-paid but less experienced employee, Virginia Paris, who allegedly was a friend of agency manager Judith McCarthy, could take her place. Cofield also asserted that her termination was due in part to her activities as a union shop steward. Additionally, appellants alleged that their removals were not conducted in accordance with the RIF regulations because they had been improperly placed in lesser competitive areas that did not correspond to their positions. Last, appellants argued that they were entitled to priority reemployment.

The AJ found that OCP's April 2009 RIF was not initiated by the OCP Director but was grounded in the District's financial crisis, which caused the City Administrator to order District agencies, including OCP, to reduce their budgets for fiscal year 2010. As a result, the AJ concluded that the RIF was conducted under the Abolishment Act, which was enacted "specifically for the purpose of addressing budgetary issues resulting in a RIF." The AJ also concluded that the evidence in the record did not support appellants' claims that the RIF of appellants was pretextual, that the newly hired employees were friends of upper management, or that the new hires were replacements for appellants. Additionally, the AJ determined that there was no evidence in the record suggesting that appellants were improperly placed in their respective single-person competitive levels, and therefore, they were not

eligible for one round of lateral competition. The AJ declined to consider Cofield's claim that her priority reemployment rights had been violated on the grounds that OEA lacked jurisdiction to consider such claims which were subject to a grievance procedure, appealable to the Mayor or Superior Court; moreover, according to the AJ, appellants were not entitled to reemployment priority because the RIF was conducted under the Abolishment Act.[4]

After appellants sought review, the Superior Court (Hon. John M. Mott) issued an Amended Order affirming the AJ's determination that the RIF was carried out pursuant to the Abolishment Act and that OEA lacked jurisdiction to consider claims concerning priority reemployment rights. But the trial court could not "determine from the record if [appellants had been] properly separated from their respective positions of record, as both of them [had been] reassigned in the months preceding the RIF." The trial court identified a discrepancy between Beale's SF-50 (personnel action form) and the position used to determine her competitive area:

> Beale was reassigned to a Program Analyst position on February 1, 2009, whereas Cofield was assigned to the "Goods Unit" in January 2009, before being shifted back to her original position on March 15, 2009. Beale's "Form [SF-]50" identifies her February 2009 reassignment to

---

[4] The AJ's decision predated *Stevens*, in which we concluded that RIFs under the Abolishment Act can be undertaken each year following timing and notification requirements, "without regard to particular financial circumstances." 150 A.3d at 319.

OCP as a whole, without identifying any particular subdivision. However, the justification documents used by DCHR in creating the lesser competitive area identified Beale's position as being located in the "Procurement Support" subdivision of OCP. Similarly, Beale's RIF notice identifies "Procurement Support" as her position's competitive area.

The trial court thought there might be a similar discrepancy with respect to Cofield. However, because Cofield's Form SF-50 had not been submitted into evidence, the trial court could not determine whether Cofield had been properly terminated. The trial court remanded the case to OEA to determine whether there was substantial evidence in the record that appellants had been terminated from their positions of record consistent with the RIF regulations.

On remand, the AJ concluded that appellants had been properly placed in their respective single-person competitive levels based on their positions of record and, therefore, were not eligible for one round of lateral competition. Because the record contained unexecuted copies of appellants' Form SF-50s,[5] the AJ relied on appellants' pay stubs to determine their official positions of record. The AJ found that appellants' paystubs listed the same positions as those "slated for abolishment" in the administrative order submitted to the Mayor's office requesting RIF

_____

[5] The SF-50 forms showed Beale's position as a "Program Analyst" and Cofield's position as a "Staff Assistant."

authorization. Appellants again sought review in the Superior Court (Hon. Robert R. Rigsby), which affirmed the AJ's decision. This appeal followed.

## II. Standard of Review

"[W]e review agency decisions on appeal from the Superior Court the same way we review administrative appeals that come to us directly." *Dupree v. D.C. Dep't of Corr.*, 132 A.3d 150, 154 (D.C. 2016). "Thus, in the final analysis, confining ourselves strictly to the administrative record, we review the OEA's decision, not the Superior Court's, and we must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law." *Id.* at 154 (quoting *Settlemire v. D.C. Off. of Emp. Appeals*, 898 A.2d 902, 905 n.4 (D.C. 2006)). "To pass muster, an administrative agency decision must state findings of fact on each material, contested factual issue; those findings must be supported by substantial evidence in the agency record; and the agency's conclusions of law must follow rationally from its findings." *Murchison v. D.C. Dep't of Pub. Works*, 813 A.2d 203, 205 (D.C. 2002). "Questions of law, including questions regarding the interpretation of a statute or regulation, are reviewed *de novo*." *Dupree*, 132 A.3d at 154.

## III. Analysis

Appellants raise three arguments on appeal. First, they contend that the AJ erroneously declined to rely on their Form SF-50s when determining whether OCP properly separated them from their positions of record. Second, they assert that the AJ erroneously rejected their claim that OCP's RIF was pretextual and, as applied to them, was a disguised adverse action. Finally, Beale argues that the AJ erroneously declined, on jurisdictional grounds, to consider her claim that OCP violated her priority reemployment rights. We address each argument in turn.

## A. Appellants' Positions of Record

Appellants' core contention is that the AJ erred in finding that appellants had been properly placed in their respective single-person competitive areas because, they claim, their positions of record located them in agency-wide positions at OCP—not the lesser competitive areas from which they were RIF'd. In support of their claim, appellants assert that their Form SF-50s clearly demonstrate that they held agency-wide positions, and that it was improper for the AJ to have used their paystubs to determine their positions of record. Alternatively, appellants argue that even their paystubs show their positions of record were agency-wide within OCP,

not the lesser competitive areas from which they were RIF'd. We disagree with both contentions. In short, appellant's argument is unpersuasive because (1) there is no requirement to use a Form SF-50 to determine an employee's position of record, and (2) the record supports the AJ's determination that appellants were employed in the lesser competitive areas designated for the RIF and, because they were the only employees at their level within their respective areas, they were not entitled to a round of competition.

Competitive areas are established by the employing agency or the District of Columbia Office of Human Resources when a RIF is requested and subsequently authorized expressly for the purpose of conducting the RIF. *See* 6-B D.C.M.R. § 2409.2; *see also Johnson v. D.C. Dep't of Pub. Health*, 162 A.3d 808, 810 (D.C. 2017) (noting that "the DCHR director issued an amended administrative order" and "selected particular areas within the agency, thereby creating 'lesser competitive areas'"); *Stevens*, 150 A.3d at 323 (noting an administrative order that authorized RIF designated divisions within the Department of Health as lesser competitive areas). Under the regulations, "each agency shall constitute a single competitive area," and "[l]esser competitive areas within an agency may be established by the personnel authority" or at the request of an agency head. *See* 6-B D.C.M.R. § 2409.1 to .3.

Competitive levels, on the other hand, are "based upon the employee's position of record," which is "the position for which the employee receives pay or the position from which the employee has been temporarily reassigned or promoted on a temporary or term basis." *Id.* § 2410.2 to .3. An employee is generally entitled to one round of lateral competition against other employees in the same competitive area and level. *See id.* § 2412.2. However, if an employee in the competitive area is the only person at her competitive level (i.e., a single-person competitive level), "there is no one against whom . . . she [can] compete, and . . . the one-round-of-lateral-competition requirement . . . is inapplicable." *Stevens*, 150 A.3d at 323-24.

Appellants' competitive areas were established by the administrative order requesting RIF authorization at OCP. The administrative order identified Cofield's lesser competitive area as the Office of the Assistant Director for Procurement and Beale's lesser competitive area as the Office of Procurement Support. It is true, as appellants contend, that their Form SF-50s do not list their respective lesser competitive areas and instead identify only OCP as their employing agency. But, as the District explained at oral argument, an employee's Form SF-50 is unlikely to include the lesser competitive area that an employee will be placed in during a RIF

because lesser competitive areas are created for the express purpose of conducting a RIF and limiting an employee's competition rights.[6]

Therefore, the question of whether appellants were entitled to a round of competition prior to termination turns on whether they were the only employees at their competitive level within their respective lesser competitive areas.

On remand, the AJ determined that appellants had been properly separated from their positions of record because appellants' position titles and position numbers in the administrative order were the same as those listed on their Form SF-50s.[7]  However, because both appellants' Form SF-50s were unexecuted, the AJ

---

[6] This does not mean that the establishment of a lesser competitive area is without procedural limitations.  To the contrary, agencies must request "personnel authority" and provide a "justification for the need to establish a lesser competitive area."  6-B D.C.M.R. § 2409.3(c).  Moreover, the regulations prohibit the creation of lesser competitive areas that are smaller "than a major subdivision of an agency" or that are not "clearly identifiable and distinguish[able] from others in the agency in terms of mission, operation, function, and staff."  Id. § 2409.4.  Here, the stated justification for the RIF at OCP was a "lack of funds" and appellants' lesser competitive areas were located in clearly identifiable subdivisions of OCP as indicated on OCP's organizational chart.

[7] The administrative order requesting authorization for the RIF at OCP listed Beale's position of record as "Program Analyst" and her position number as "00026621," the same position title and number listed on her Form SF-50.  The administrative order listed Cofield's position of record as a "Staff Assistant" and her position number as "00010575," the same position title and number listed on her Form SF-50.

looked to appellants' paystubs to determine their positions of record. On this basis, the AJ concluded appellants had been properly placed in single-person competitive levels and were therefore not entitled to one round of lateral competition.

Appellants fail to cite any District statutes or regulations requiring that a Form SF-50 be the only evidence used to determine an employee's position of record. The applicable regulations provide that an "employee's position of record is the position for which the employee receives pay or the position from which the employee has been temporarily reassigned or promoted on a temporary or term basis." 6-B D.C.M.R. § 2410.3. But there is no requirement in the statute or regulation that only a Form SF-50 may be used to determine the position "for which the employee receives pay," and it is reasonable for the OEA to rely on a pay stub as an accurate record of that position.[8] Although OEA may have historically relied on Form

---

[8] Appellants cite the OEA's initial decision in *Ross v. OCP*, OEA No. 2401-013-09R11, 7 (Apr. 8, 2013), for the proposition that OEA has relied almost exclusively on Form SF-50s to determine an employee's position of record. But *Ross* carries little weight here. In *Ross*, the OEA determined that because the petitioner had not been officially reassigned to the agency division from which she was RIF'd, the petitioner's official position of record was the position listed on her Form SF-50, which listed a different division from which she had recently been transferred. *Id.*; *see* 6-B D.C.M.R. § 2410.

Appellants' reliance on *Klipp v. Dep't of Homeland Sec.*, 34 F.4th 1326 (Fed. Cir. 2022), is simply misplaced. *Klipp* presented the opposite situation, where the Merit Systems Protection Board relied solely on the position description, without considering, as it was required to do, the actual duties of the employee in determining

SF-50s in making employee position-of-record-determinations, we cannot say it was error for the AJ, who thought there were no executed Form SF-50s in the record, to have looked to appellants' paystubs in making this determination.[9]

Appellants' alternative argument is that because their paystubs (as well as their Form SF-50s) did not identify the specific organizational unit within OCP to which they were assigned, their positions should be deemed to have been agency wide. Even if we assume the odd notion that there might be cases where a position is untethered to a particular organizational unit within an agency, deeming appellants to have occupied agency-wide positions is contrary to the OCP organizational charts in the record, which show their positions within the subdivisions of Procurement (Cofield) and Procurement Support (Beale). Moreover, appellants' undisputed testimony establishes that they were RIF'd from the positions for which they

---

whether those duties entitled him to credit as a law enforcement officer. 34 F.4th at 1332. In this case, all the documentation of record (i.e., the SF-50s, paystubs, and RIF administrative order) specify the same positions for appellants, and appellants' testimony confirmed the documentation was accurate.

[9] On appeal, appellants argue the AJ was wrong in thinking that only non-executed versions of appellants' Form SF-50s were submitted into the record, and include images of appellants' executed Form SF-50s in their brief as evidence that executed versions of both forms were in the record. Even assuming that executed versions of appellants' Form SF-50s were included in the record, appellants were not prejudiced by the AJ's reliance on the paystubs where both sets of documents reflect the same positions and support the AJ's decision.

received pay and that they were employed in the organizational units that came within the designated lesser competitive areas, as required by the regulations. Beale testified that she was employed as a Program Analyst, and that she reported to Sheila Mobley, who oversaw the Office of Procurement Support. Similarly, Cofield testified that she was employed as a Staff Assistant, and that she reported to Donna McCarthy, the Assistant Director of Procurement. Thus, substantial evidence supports the AJ's determination that because Beale was the only Program Analyst and Cofield was the only Staff Assistant in their respective lesser competitive areas designated by OCP in connection with the RIF, they were not entitled to a round of lateral competition.

## B. The RIF as a Pretextual Adverse Action

Next, appellants contend that the RIF, as applied to them, was a pretextual adverse action because they were transferred into positions slated for abolishment. Appellants assert that (1) OCP's stated rationale for the RIF, a lack of funds, was a sham because OCP hired Paris and Lisbon at the same time appellants' positions were terminated; and (2) OCP failed to follow the regulations governing the establishment of lesser competitive areas. Because the AJ's conclusion that the RIF

was not a pretextual adverse action is supported by substantial evidence in the record, we must affirm the AJ's decision.[10]

In rejecting appellants' claim that the RIF was pretextual, the AJ first addressed appellants' argument that they had been terminated to make room in the budget for Paris and Lisbon. The AJ determined that Paris was hired in early February 2009, before the RIF, and had not been hired to perform work previously performed by Cofield or Beale. Likewise, the AJ determined that OCP began recruiting for Lisbon's program analyst position before the April 20, 2009, RIF and that she had not been hired to perform work previously performed by Beale or Cofield. Additionally, the AJ noted, there was "no actionable evidence" that Lisbon or Paris were friends of upper management at OCP.

As for appellants' placement in lesser competitive areas, the AJ concluded that there was nothing in the record to indicate their "placement in their respective competitive levels and areas was anything but proper." Finally, relying on this

---

[10] The District argues in its brief that the Abolishment Act precludes an appeal challenging the designation of a lesser competitive area. *See* D.C. Code § 1-624.08(f); *Stevens*, 150 A.3d at 323. But we do not understand appellants' argument as challenging the agency's designation of lesser competitive areas for the RIF; what they dispute is that this was a true RIF, contending it was a disguised adverse action.

court's decision in *Anjuwan v. D.C. Dep't of Public Works*, 729 A.2d 883, 885 (D.C. 1998), the AJ explained that he lacked the authority to second-guess determinations by the Mayor's office that the city faced a shortage of funds, and that once such shortage is established, agencies have discretion in implementing a RIF to address the shortfall. Because the instant RIF was conducted pursuant to the order of the City Administrator to address a budgetary shortfall, OEA could not second-guess OCP's decision as to which positions it would abolish.

On appeal, appellants allege that they were transferred into positions that ended up in single-person competitive levels expressly for the purpose of terminating them, similar to the employee in *Levitt v. D.C. Office of Employee Appeals*, 869 A.2d 364 (D.C. 2005), whose position was abolished in a RIF several weeks after his transfer into that position. Unlike the evidence in *Levitt*, the evidence here supports the AJ's determination that appellants were not transferred into positions slated for abolishment. During the evidentiary hearing, Cofield testified that she was assigned to work on the D.C. Supply Schedule as a Staff Assistant in 2005, a position located within the Office of the Assistant Director for Procurement that she held for three years before the RIF. As for Beale, although her title was changed from Executive Assistant to Program Analyst three weeks before the RIF, she testified that she voluntarily applied for a program analyst position because she

was no longer performing the functions of an executive assistant. Thus, appellants' contention that the AJ failed to adequately consider their claim that the RIF, as applied to them, was a pretextual adverse action is not persuasive.

Appellants' argument that the lack of funds cited by OCP as the basis for the RIF was a sham fares no better. In *Anjuwan*, we explained that OEA does not have the "authority to second-guess the mayor's decisions about the shortage of funds" or an agency's "decisions about which positions should be abolished in implementing the RIF." 729 A.2d at 885. Once OEA has determined that a "RIF is justified by a shortage of funds at the agency level, the agency has discretion to implement the RIF and may release employees whose positions are adequately funded." *Id.* That is what occurred here, as shown in documents about actions taken by the City Administrator and OCP. The AJ did not err in declining to look behind the executive's decision concerning funding and personnel to meet a financial shortfall.

Appellants also suggest that the AJ's "threadbare" ruling warrants reversal because it fails to address "each material, contested factual issue" as we have required. Specifically, appellants claim the OEA ignored their argument that the RIF, as applied to them, was a pretextual adverse action. Not so. Following the hearing, the AJ issued findings of fact addressing the contested factual issues and

made conclusions of law that flow rationally from those findings. Appellants' pretext claim was thoroughly explored during the four-day evidentiary hearing. *Cf. Levitt*, 869 A.2d at 366-67 (remanding to OEA for an evidentiary hearing where employee provided detailed allegations of improper employment actions). "[O]n questions of credibility[,] the fact-finding of hearing officers is entitled to great weight." *Johnson v. D.C. Dep't of Pub. Health*, 163 A.3d 746, 753 (D.C. 2017) (second alteration in original) (quoting *Arthur v. D.C. Nurses' Examining Bd.*, 459 A.2d 141, 146 (D.C. 1983)). "[W]e are bound by factual findings 'supported by substantial evidence on the record as a whole' even if we 'may have reached a different result based on an independent review of the record.'" *Id.* (quoting *Williamson v. D.C. Bd. of Dentistry*, 647 A.2d 389, 394 (D.C. 1994)). Here, the AJ heard the testimony and evidence presented over the course of the hearing, and based on his credibility determinations, made findings of fact. As a court of appellate review, we are not free to come to our own determinations. On this record, appellants have not demonstrated that the AJ's decision is insufficient or unsupported.

## C. OEA's Jurisdiction Over Priority Reemployment Claims

Finally, appellant Beale[11] argues that the AJ erroneously refused to consider her claim to priority reemployment on grounds that OEA lacked jurisdiction. Beale asserts that her priority reemployment rights were violated when OCP hired Lisbon as a Program Analyst, a position identical to the one Beale held prior to her termination. Beale further argues that, under the OEA enabling act, OEA has jurisdiction over a priority reemployment claim because in hiring Lisbon, "OCP undertook such 'final action'" that affected a RIF. The AJ opined that Beale's priority reemployment rights claim should have been filed as a grievance with OCP and, if denied, subject to appeal to the Mayor or Superior Court. The AJ explained that because OEA lacks jurisdiction over grievance appeals, OEA could not consider Beale's priority reemployment claims. The AJ further reasoned that because the instant RIF was conducted under the Abolishment Act, OCP was not required to engage in priority reemployment procedures. We remand to OEA for a determination of whether it has jurisdiction to consider Beale's claim.

---

[11] Appellant Cofield does not press her priority reemployment claim on appeal.

First, we note that following a RIF, either under the general RIF statute or the Abolishment Act, qualifying employees who are not placed in another position pursuant to lateral competition are entitled to "[p]riority reemployment consideration." *See* D.C. Code §§ 1-624.02(a)(3), 1-624.08(h). District regulations state that the "personnel authority shall establish and maintain a reemployment priority list for each agency." 6-B D.C.M.R. § 2427.1. The regulations also require that a qualifying employee be "entered automatically on the reemployment priority list immediately after it has been determined that the employee is to be adversely affected by a reduction in force and not later than issuance of the notice of reduction in force." *Id.* § 2427.5. It is clear, therefore, that Beale was entitled to priority reemployment consideration once it was determined that she would be terminated under the RIF.

The issue of jurisdiction to hear claims of deprivation of reemployment rights is not so clear. Under the CMPA,

> [a]n employee may appeal a final agency decision affecting a performance rating which results in removal of the employee (pursuant to subchapter XIII-A of this chapter), an adverse action for cause that results in removal, reduction in force (pursuant to subchapter XXIV of this chapter), reduction in grade, placement on enforced leave, or suspension for 10 days or more (pursuant to subchapter XVI-A of this chapter) to the Office upon the record and pursuant to other rules and regulations which

> the Office may issue. Any appeal shall be filed within 30
> days of the effective date of the appealed agency action.

D.C. Code § 1-606.03(a). The CMPA provides for appeals to OEA by persons who have received a separation notice through a RIF "if he or she believes that his or her agency has incorrectly applied the provisions of this subchapter or the rules and regulations issued pursuant to this subchapter." *Id.* § 1-624.04. The Abolishment Act further provides, however, that "[n]either the establishment of a competitive area smaller than an agency, nor the determination that a specific position is to be abolished, nor separation pursuant to this section" are reviewable, with two exceptions, only one of which involves OEA. *Id.* § 1-624.08(f). "An employee may file with the Office of Employee Appeals an appeal contesting that the separation procedures of subsections (d) [providing for one round of lateral competition] and (e) [providing for minimum 30-day written notice prior to separation] were not properly applied." *Id.* § 1-624.08(f)(2). Other complaints "contesting a determination or a separation" are to be submitted pursuant to procedures established by the Mayor. *Id.* § 1-624.08(f)(1).

"In construing statutes '[w]e look to the plain meaning of the statute first, construing words according to their ordinary meaning.'" *Washington Tchrs.' Union*, 960 A.2d at 1132 (alteration in original) (quoting *Boyle v. Giral*, 820 A.2d 561, 568 (D.C. 2003)). "The literal words of [a] statute however, are not the sole index to

legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice." *Id.* (alteration in original) (quoting *Boyle*, 820 A.2d at 568). We understand Beale's argument to be that an agency's failure to honor an employee's priority reemployment rights comes within OEA's general jurisdiction because it has "an effect on" or "influence[s] in some way"[12] a final agency decision involving a RIF. She bases this argument on the agency's obligation to an employee to enter their name "automatically on the [agency's] reemployment priority list immediately after it has been determined that the employee is adversely affected by the [RIF]." 6-B D.C.M.R. § 2427.5.

It is premature for the court to decide this jurisdictional issue. "[T]he determination whether the OEA has jurisdiction is quintessentially a decision for the OEA to make in the first instance." *Washington Tchrs.' Union*, 960 A.2d at 1131 (quoting *Armstead v. District of Columbia*, 810 A.2d 398, 400 (D.C. 2002)). To receive deference from the court on a matter of statutory interpretation, "agency interpretations must reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations . . . and the record must

---

[12] The ordinary meaning of "affect" is quite broad: "to produce an effect on; to influence in some way." *Affect*, *Black's Law Dictionary* (11th ed. 2019).

provide evidence that the agency considered the language, structure or purpose of the statute when selecting an interpretation." *Washington Hosp. Ctr. v. D.C. Dep't of Emp. Servs.*, 789 A.2d 1261, 1264 (D.C. 2002) (quotation marks omitted) (quoting *Kirkpatrick v. D.C. Pub. Schs.*, 786 A.2d 586, 594 (D.C. 2001)). However, there is no such record in this case. The AJ did not address Beale's jurisdictional argument by parsing the language, history and purpose of the relevant statutory provisions, opting to rely instead on the opinion of an employee who testified that Beale's claim was a "grievance" outside OEA's competence. That is plainly insufficient to constitute a reasoned decision that demands our deference. We remand the case to the Superior Court to further remand to the OEA for a determination in the first instance of its jurisdiction over priority reemployment claims.[13] *See id.* at 1265.

---

[13] Appellants cite *Rogers v. D.C. Public Schools*, OEA No. 2401-0255-10R14 (July 21, 2015), for the proposition that OEA has previously exercised jurisdiction over claims alleging violations of an employee's priority reemployment rights. However, due to *Rogers*'s procedural posture, it does not support that OEA has jurisdiction over these claims. *Rogers* was remanded to OEA by the Superior Court for a finding on whether the agency (the District of Columbia Public Schools) had properly placed Rogers on its priority reemployment list. *Id.* at 3-5. On remand, the AJ determined that the agency had failed to prove that Rogers had been considered for priority reemployment as required by the regulations. *Id.* at 13. The OEA Board affirmed the AJ's decision. *Id.* Neither the AJ nor the OEA Board considered whether OEA had jurisdiction to consider a claim asserting a violation of priority reemployment rights.

Our research into other OEA cases reveals that some address claims concerning priority reemployment rights, but without explaining the jurisdictional basis for doing so. These cases, which involve the general RIF statute, focused on whether the employee's notice of separation referred to priority reemployment rights

## IV.  Conclusion

We affirm in part and reverse and remand the case to the Superior Court for further proceedings before the OEA consistent with this opinion.

*So ordered*.

---

or determined that the employee had in fact been reemployed.  *See, e.g.*, *Gamble v. Metro. Police Dep't*, OEA No. 2401-0018-12 (Mar. 7, 2017) (finding no violation of an employee's priority reemployment rights when the employee's separation notice explained the employee's "right to priority placement consideration"); *Taylor v. D.C. Pub. Schs.*, OEA No. J-0075-19 (Feb. 19, 2020) (same); *Emp. v. D.C. Pub. Schs.*, OEA No. 2401-0041-21 (Feb. 16, 2023) (finding that the agency "satisfied the priority reemployment right" of an employee who found alternate employment within the agency).  None appear to grapple with the question Beale raises: that the agency did not in fact consider her for priority reemployment.