**Mark H. LEVITT, Appellant,**

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, et al., Appellees.**

No. 03–CV–1249.

District of Columbia Court of Appeals.

Argued Dec. 10, 2004.

Decided March 10, 2005.

Mitchell I. Batt, Rockville, MD, for appellant.

William J. Earl, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy

Attorney General, were on the brief, for the District of Columbia.

Sheila G. Barfield, General Counsel, filed a statement in lieu of brief for the Office of Employee Appeals.

Before SCHWELB and REID, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

On October 5, 1999, appellant Levitt filed a Petition for Appeal form with appellee District of Columbia Office of Employee Appeals ("OEA"). Appellant stated in his petition that he wished to appeal the "[t]ermination of [his] employment through [an] *alleged* reduction in force." (Emphasis added.) [1] He also stated that his position title had been "Labor Relations Officer," that he had held this position for "6 weeks," that his type of service was "Career," and that the duration of his District of Columbia government service was "19.8" years.

Appellant attached to his Appeal Petition to the OEA four typewritten pages. There, he asserted, *inter alia,* that he had initially been appointed to a "career service" position in the Department of Corrections ("DoC"), but in April 1997, was appointed to an "excepted service" position with DoC. He further asserted that in July 1999, his "excepted service" was terminated and he was "retreated" back to "career service" in the D.C. Office of Labor Relations and Collective Bargaining. [2] He al-

leged that in this Office he had been "placed into a *newly created* Grade 15 in the Office of Labor Relations, but without any supervisory responsibilities. This is extremely unusual ... because rarely does a Grade 15 position not have supervisory responsibilities. Never before had a non-supervisory Grade 15 Labor Relations Officer position existed in the history of that office." He also alleged that "by placing [him] in this particular job/grade/non-supervisory classification ... [the District] effectively put [him] in a one-of-a-kind competitive level ...." Appellant pointed out that "[he] was given an assignment which came to an end *less than one month after it was created.*" (Emphasis added.) He requested that discovery be undertaken and a hearing held.

The OEA Administrative Judge declined to hold a hearing, concluding that D.C.Code § 1–624.08(f) (2001) [*formerly* D.C.Code § 1–625.7(f) (1999 Repl.)] precluded her from reviewing an agency's decision to abolish a specific position. [3] In so ruling, the Administrative Judge stated:

In this case, Employee contends that Agency created a reduction in force ("RIF") to terminate him without cause .... The plain language of subsection (f) ... provides that an agency's determination that a specific position is to be abolished is not subject to review.... [Employee's] argument ... requires the undersigned to review [the] agency's motivation for abolishing Employee's po-

---

1. D.C.Code § 1–616.52(b) (2001) provides in pertinent part: "An appeal from a removal ... may be made to the Office of Employee Appeals."

2. The Comprehensive Merit Personnel Act provides that a "person with Career or Educational Service status may retreat ... to a vacant position in such services for which he or she is qualified." D.C.Code § 1–609.02 (2001).

3. The Board of the OEA affirmed and adopted its Administrative Judge's opinion. The trial court thereafter affirmed the Board's decision concluding that it "[could not] find that the Administrative Judge's decision to strictly follow the letter of the law was clearly erroneous."

sition, which subsection (f) forbids her from doing.[4]

D.C.Code § 1–624.08(f)(2) (2001) provides that an agency's decision to abolish a specific position shall not be subject to review *except* where an employee affected by the abolishment was (1) not afforded the one round of lateral competition to which he is entitled for positions within the employee's competitive level, *see* D.C.Code § 1–624.08(d); or (2) not given proper written notice of at least thirty days before the effective date of the employee's separation. *See* D.C.Code § 1–624.08(e). We note that appellant does not contend that either of these express exceptions is applicable to him. Rather, he complains about the unusual personnel actions the employing agency took *before* abolishing his position in September 1999. Thus, in the attachment to his Petition, he points to the employing agency first transferring him, after a number of years in a career service position, to the excepted service, and, then, transferring him out of the excepted service and back to a *newly-created* career service supervisory position with no one to supervise; and, then, a few weeks later, abolishing the very position it had specifically created for him.

In *Anjuwan v. District of Columbia Dep't of Pub. Works,* 729 A.2d 883, 885–86 (D.C.1998), this court noted that an employee challenging the abolition of the position he occupied needed to demonstrate that his contention was "non-frivolous" in order to be entitled to a hearing. We conclude that the contentions in appellant's Petition for Appeal were not frivolous and, therefore, met the threshold *Anjuwan* established.

OEA argues that "the apparent legislative intent ... [was] to make fiscal 1999 RIF's easier for an agency to undertake and less vulnerable to administrative challenge." While we recognize that the District of Columbia government may have been given statutory authority upon proper notice to abolish positions without review in order to meet budgetary constraints, we note that here the employing agency *first created* a position in fiscal 1999 and then abolished it a few weeks later while still in the very same fiscal year.

We review the OEA's decision directly. *See Anjuwan, supra,* 729 A.2d at 885 ("[o]n appeal from the Superior Court's disposition of a petition from an agency finding, our review is the same as it would be if we were reviewing the agency decision directly"). We conclude under the particular facts and circumstances of this case that OEA's decision to dismiss appellant's Petition for Appeal on its face and not to allow discovery and hold a hearing upon appellant's detailed allegations of improper employment actions is

---

4. We note the conclusion of the United States Court of Appeals for the District of Columbia in a federal employee discharge case where an agency had abolished an employee's position:

Were we to look no further than the *stated* reason for an employee's separation, not only could an agency cavalierly discharge ... under the guise of a "reduction-in-force" but under that type of action it could also deprive them of all adverse action procedural rights ... including the *right* to a hearing.

* * *

Although a separation may have been stated by an agency to be by a reduction-in-force, when the Commission's relieving authority is invoked by *non-frivolous allegations of an illegal discharge,* which if proved would constitute an illegal adverse action by the agency, we think a request for a hearing should be granted as a procedural right to which [the requester is] entitled. [Emphasis added.]

*Fitzgerald v. Hampton,* 152 U.S.App.D.C. 1, 4–6, 467 F.2d 755, 758–60 (1972).

not supported by substantial evidence. *See Cocome v. Lottery & Charitable Games Control Bd.*, 560 A.2d 547, 549–50 (D.C.1989) (citations omitted). Accordingly, the trial court's decision is reversed and the case is remanded to the Board of OEA with directions to vacate its order of affirmance and order appropriate discovery and a hearing by the Administrative Judge.

*So ordered.*