*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-790

07/06/2017

FILED
District of Columbia
Court of Appeals

*Julio Castillo*
Clerk of Court

KARLEANE JOHNSON, APPELLANT,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAP-278-12)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued April 20, 2017                                    Decided July 6, 2017)

*David A. Branch* for appellant.

*Holly M. Johnson*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Donna M. Murasky*, Senior Assistant Attorney General, were on the brief for appellee District of Columbia Department of Health.

Before MCLEESE, *Associate Judge*, and WASHINGTON and FARRELL, *Senior Judges*.

FARRELL, *Senior Judge*:    Karleane Johnson appeals from the Superior Court's affirmance of a decision by the Office of Employee Appeals (OEA) upholding her separation from the District of Columbia Department of Health

(DOH) as part of a July 2009 reduction in force (RIF). Appellant challenges both the OEA's determination that the RIF was conducted pursuant to the Abolishment Act, D.C. Code § 1-624.08 (2012 Repl.), and the legality of the RIF under the general RIF statute, D.C. Code §§ 1-624.01 to .04. Specifically, appellant argues that the RIF was not based on an actual budgetary crisis and that DOH failed to meet procedural requirements of the statute. We affirm.

**I.**

Appellant worked for DOH as a clerical assistant in the Addiction Prevention and Recovery Administration (APRA). On July 28, 2009, the director of the District of Columbia Department of Human Resources (DCHR) proposed a "realignment" of DOH. On July 31 the director authorized administrative orders dated July 27 implementing RIFs for various parts of DOH because of "Lack of Funds." DCHR also created a retention register on July 31 that included appellant's position among those to be abolished and appellant received notice on the same day of the impending RIF, listing her effective termination date as September 4, 2009. On August 13, the DCHR director issued an amended administrative order for the RIF in which, instead of selecting DOH as a whole as

the subject of the RIF, the director selected particular areas within the agency, thereby creating "lesser competitive areas," *see* 6-B DCMR § 2409.2 (2008), including the APRA. The RIF applied to all nine clerical assistant positions in the APRA. The amended order, like the July 31 orders, stated that the RIF was based on a "Lack of Funds."

Following her termination, appellant appealed to the OEA and challenged numerous aspects of her termination, namely that: 1) DOH had not adequately shown that the RIF was due to a lack of funds; 2) appellant's separation was invalid because appellant had been notified of her termination before the RIF approval; 3) DOH had not considered job sharing or other alternatives to the RIF; 4) DOH had not properly provided appellant with one round of lateral competition; 5) DOH was not authorized to define a lesser competitive area; and 6) DOH had erroneously asserted that the RIF was conducted under the Abolishment Act. The OEA, although providing appellant with limited relief because DOH had not given her proper notice of her termination,[1] concluded that the alleged defects in the RIF

---

[1] Appellant continues to argue that DOH "failed to give a thirty-day notice," but does not explain why the back pay and benefits the OEA awarded her failed to remedy the defect in notice. The remedy appellant sought before the OEA —

(continued …)

procedures,[2] chiefly the failure to provide a round of lateral competition, entitled appellant to no relief because all positions within appellant's competitive area at her competitive level had been abolished.  Further, the OEA ruled that it did not have authority to "decide whether there was in fact a *bona-fide* budget crisis" giving rise to the RIF.  Appellant unsuccessfully petitioned the Superior Court for review of the OEA's decision, then filed this appeal.

## II.

This court "review[s] the OEA's decision, not the decision of the Superior Court, and we must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law." *Stevens v. District of Columbia Dep't of Health*, 150 A.3d 307, 312 (D.C. 2016) (internal quotation marks omitted).

_____
(…continued)
reinstatement to an abolished position — was wholly disproportionate to any harm the defective notice might have caused her.

[2]  The OEA understood the RIF to have been conducted under the Abolishment Act.  See discussion in text, *infra*.

The District in light of the decision in *Stevens*, *supra*, rightly concedes error in the OEA's determination that the RIF was governed by the Abolishment Act, not the general RIF statute. *See Stevens*, 150 A.3d at 317-18. Appellant argues, accordingly, that at the least we should remand this case to the OEA to determine whether DOH complied with the general RIF statute. A remand would be warranted, however, only if this court found facial merit in appellant's challenge to the OEA's refusal to review DOH's determination that the RIF was justified by a lack of funds or appellant's claim that DOH did not follow correct procedures in conducting the RIF. We find no such merit.

## A.

Appellant first argues that DOH "failed in its burden to show that there was a shortage of funds justifying the RIF" under the general RIF statute. The OEA, however, correctly recognized its lack of authority to review the agency's contrary determination. Although each personnel authority must abide by the general RIF procedures when a RIF is required by "[l]ack of work," "[s]hortage of funds," or "[r]eorganization or realignment," 6-B DCMR § 2401.1 (a)-(c) (2008), "the OEA lacks 'authority to second-guess the mayor's decision about the shortage of

funds,'" whether that decision is made under the Abolishment Act or the general RIF statute. *Stevens*, 150 A.3d at 325 n.30 (quoting *Anjuwan v. District of Columbia Dep't of Pub. Works*, 729 A.2d 883, 885 (D.C. 1998)).[3] Further, the RIF was ordered not only for "Lack of Funds" but as part of an agency-wide "realignment," another lawful justification for a RIF. *See* 6-B DCMR § 2401.1 (c). Given the personnel authority's right to "determine . . . [t]he number, types, and grades of positions of employees assigned to an agency's organizational unit," D.C. Code § 1-617.08 (a)(5)(B), appellant offers no valid reason why the OEA erred in not second-guessing DOH's realignment decision.[4]

**B.**

Appellant further contends that DCHR could not establish a lesser

---

[3] Moreover, the District asserts in its supplemental brief that DOH was indeed facing a serious shortfall of funds when it conducted the RIF in question.

[4] Appellant's reliance on *Levitt v. District of Columbia Office of Emp. Appeals*, 869 A.2d 364 (D.C. 2005) is misplaced. There, the appellant complained of "unusual personnel actions" that culminated in the agency "abolishing the very position it had specifically created for him." *Id.* at 366. The RIF in this case, by contrast, was aimed at all of the positions within appellant's competitive level and did not target her specifically. *See Stevens*, 150 A.3d at 325 (distinguishing *Levitt* on similar grounds).

competitive area without first receiving a request from DOH for it to do so. Appellant thus argues that she was entitled to one round of lateral competition at the agency-wide level. We reject the premise of this argument.

Under the general RIF statute, employees subject to a RIF shall be given "[o]ne round of lateral competition limited to positions within the employee's competitive level." D.C. Code § 1-624.02 (a)(2). Competition within an employee's competitive level is restricted to the designated competitive area. *See* 6-B DCMR § 2410.4 (2012). Although in general each agency is designated as "a single competitive area," 6-B DCMR § 2409.1, "lesser competitive areas" may be established in two ways: 1) "by the personnel authority," and 2) pursuant to a written request from the agency head to the personnel authority. 6-B DCMR § 2409.2 to .3. The role of personnel authority here had been delegated to the director of DCHR in 2008, D.C. Code § 1-604.06 (b), and the director, exercising her initiative under 6-B DCMR § 2409.2, established the APRA as a lesser competitive area.

Appellant's argument that a lesser competitive area can only be established in response to a request from the agency head thus runs counter to the plain

language of the regulation. But even if the regulatory scheme were less clear on this point, appellant does not persuade us that the outcome of a remand for the OEA to opine on the issue — and of any resulting appeal to this court on the point — would be more than a foregone conclusion. *See Barnette v. District of Columbia Dep't of Gen. Servs.*, OEA Matter No. 2401-0332-10, slip op. at 9 n.24 (June 9, 2015) (in rejecting the "claim[] that Agency was required to submit a written request to establish competitive areas," the OEA explains that "[t]he use of the word 'may' [in 6-B DCMR § 2409.3] indicates that such a request [by the agency head] is not a requirement to establish a competitive area");[5] *see also Nunnally v. District of Columbia Metro. Police Dep't*, 80 A.3d 1004, 1010 (D.C. 2013) ("Where we determine that a statutory term is ambiguous, . . . we must defer to an agency's interpretation of that ambiguity that is reasonable and not plainly wrong or inconsistent with the legislature's intent.") (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)). Consequently, appellant was entitled to a single round of lateral competition only within her designated lesser competitive area, and because all positions in that area at her competitive level had been abolished, the lateral competition requirement posed no

---

[5] The *Barnette* case is pending before this court on appeal and cross-appeal from the Superior Court's decision on a petition for review.

9

obstacle to her separation.

Our conclusion as to the competitive area also leads us to reject appellant's argument that a remand is necessary for the OEA to decide whether DOH failed to establish an appropriate retention register. The regulations governing establishment of a retention register, *see* 6-B DCMR § 2412 (2012), presuppose that positions for which employees may compete have been *retained* at the relevant competitive level and area. *See, e.g.*, 6-B DCMR § 2412.7 (a) ("The retention register shall include . . . [t]he name of each *competing* employee in the competitive level[.]" (emphasis added)). Elimination of all positions in appellant's competitive area at her competitive level thus made the establishment of a retention register moot.

Finally, appellant argues that DOH failed to consider the alternative measures of job sharing and reduced hours before imposing the RIF. The trial court understandably did not consider this point, because appellant failed to argue it at all in her petition to the Superior Court.[6] We consider it forfeited, *cf. Miller v.*

---

[6] Appellant, without further discussion, merely cited the point to the trial

(continued …)

*Avirom*, 384 F.2d 319, 321-22 (D.C. Cir. 1967), and our unwillingness to entertain it nonetheless is increased by its debatable merit: In concluding that budgetary and related exigencies required a RIF of all employees across the competitive area at appellant's level, DOH arguably may be assumed to have found the lesser measures such as job sharing and reduced hours inadequate to address the need; and the OEA's authority to look behind that agency judgment would be open to significant question.

For the foregoing reasons, the decision of the Superior Court is

*Affirmed.*

_____
(…continued)
court as one of the issues she had raised before the OEA.