*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0562

INNOVATIVE INSTITUTE, INC., PETITIONER,

v.

OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION, RESPONDENT.

On Petition for Review of a Decision and Order of the
Higher Education Licensure Commission
(D2021-002)

(Submitted September 18, 2024              Decided October 15, 2024[*])

*Alan Grayson* was on the briefs for petitioner.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, were on the brief for respondent. After the case was submitted, this court granted Senior Assistant Attorney General *Richard S. Love's* motion to withdraw as co-counsel of record.

Before HOWARD and SHANKER, *Associate Judges*, and THOMPSON, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of respondent's motion to publish.

SHANKER, *Associate Judge*: Innovative Institute, Inc. is a postsecondary, non-degree-granting institution offering nursing assistant and home-health training programs. Innovative sought renewal of its temporary operating license from the District of Columbia Higher Education Licensure Commission, a five-member regulatory and consumer protection agency that "ensure[s] the authenticity and legitimacy of [postsecondary] educational institutions." D.C. Code § 38-1303. Innovative submitted a license renewal application and, over the course of several months, filed supplemental documents in response to Commission inquiries.

After an evidentiary hearing, the Commission voted to deny Innovative's application. The Commission found several deficiencies in Innovative's application and operation. In particular, the Commission concluded that Innovative failed to pay all applicable fees, provide the Commission with updated curriculum and course syllabi, and maintain adequate student records, including immunization documentation and grade reports. Innovative had not been in good standing with the Commission for five consecutive years.

Innovative now petitions for review, arguing that the Commission's decision to deny its application was not supported by substantial evidence. Innovative also argues that the Commission committed a number of legal errors. We disagree and affirm the Commission's decision and order.

## I.     Background

Innovative is a postsecondary, non-degree-granting institution offering nursing assistant and home-health training programs.  Beginning in 2011, Innovative operated under year-long provisional licenses granted by the Commission.  Innovative's most recent provisional license expired on November 30, 2019.  On May 25, 2021, the Commission notified Innovative that its provisional license had expired and instructed Innovative to "submit a license renewal application with applicable fees no later than June 30, 2021."[1]  The notification further stated that "[i]f a renewal application is not submitted by the required deadline, application late fees will be applied."

The application form's cover page contained a number of directives.  It specified, among other things, that applicants must mail a paper copy of the completed application to the Commission along with two flash drives containing electronic copies.  The application further instructed that applicants must pay a $2,500 renewal fee if the renewal application is "submitted at least 60 days prior to expiration" of the previous license and a $500 late fee, in addition to the renewal fee,

---

[1] Due largely to the COVID-19 pandemic, a decision on Innovative's 2020 licensure renewal was significantly delayed.  According to the Commission, "due to the aforementioned delays[,] the deadline for [Innovative's 2021] application was set" as June 30, 2021.  The lapse in Innovative's licensure after November 30, 2019, does not appear to be an issue in these proceedings.

if it is "submitted less than 60 days" prior to the expiration of the previous license. The application warned that submissions made "without payment are considered incomplete." The Commission accepted payment online or by check with the application.

### A.    Innovative's Initial Application, Commission Review, and the Site Visit

On June 30, 2021, the deadline for the application, Innovative emailed its initial renewal application but did not pay the renewal fee online. Later that afternoon, Innovative's President, Dr. Christopher Azoroh, also mailed a paper copy of the application to the Commission along with a $2,500 check for the renewal fee. The Commission received Innovative's check and hard-copy application on July 1.[2]

The Commission's review of Innovative's application identified a number of deficiencies. The review found that Innovative did not timely submit its application or include the required $500 late fee. The application also lacked a number of supporting documents including a financial audit, a Certificate of Clean Hands from the District of Columbia Office of Tax and Revenue, records of student admissions

---

[2] There is some dispute in the record as to whether the Commission received the paper application on July 1 or July 6. This factual issue is of no consequence because under either date the submission was late and/or incomplete. *See infra* Part II.B.1. We therefore assume that the Commission received Innovative's application on the earlier of the two dates.

and grades, and documents relating to student vaccinations against communicable diseases. The review also noted that Innovative was not offering a sufficient number of classroom hours and was therefore not compliant with "the Certified Nursing Assistant program as prescribed by the District of Columbia Board of Nursing." The review also noted that Innovative had not been in good standing with the Commission for five consecutive years.

Commission staff subsequently conducted a virtual site visit during which staff members observed several other issues. Most notably, Commission staff reviewed ten sample student records and determined that they were missing key documents, such as verification of compliance with Innovative's entrance exam requirements, verification of immunity to communicable diseases, and grade reports.

### B. First Public Meeting, Innovative's Supplemental Responses, and Second Commission Review

On October 1, 2021, the Commission notified Innovative that it would hold a public meeting to consider its application and asked Innovative to cure the deficiencies identified above. Innovative responded, disputing that it submitted its application late, that its program did not comply with Board of Nursing regulations, and that the student immunization records were deficient.

The Commission held its first public hearing on October 7. After hearing testimony regarding the above deficiencies, the Commission deferred its decision pending Innovative's submission of "the documentation necessary to demonstrate compliance with the [Commission's] licensure standards." The Commission scheduled a follow-up hearing on December 2.

On October 22, the Commission sent Innovative a letter directing it to submit a number of documents. Those documents included a financial audit; a $3,000 payment covering both the application and late fees; a Certificate of Clean Hands; a revised admissions policy, academic catalog, and course syllabi; and copies of certain student records. Innovative timely responded, attaching a financial audit; a copy of its original $2,500 check; a Certificate of Clean Hands; a revised catalog and admissions policy; and a statement that it had "no new students from October 25, 2021 to [November 15]" and therefore no records to provide for those students.

The Commission conducted a second application review using Innovative's updated material. The second review found several continuing deficiencies. Specifically, Innovative had failed to pay the $500 late fee, its updated catalog was still deficient and did not include any syllabi, and student records still did not contain all required immunity, grade, and admissions documentation.

## C. Second Public Meeting

At the December 2 public meeting, the Commission heard testimony from Jocelyn N. Harris, a Commission staff specialist who had been reviewing Innovative's application. Ms. Harris testified that Innovative's application was missing "the $500 late fee, the catalog[ ] with curriculum information included," and "student records to verify [that] admissions criteria ha[d] been followed." Additionally, Innovative still had not provided "documentation of [student] vaccination or immunity to communicable diseases . . . for the majority of the records." Moreover, "some students did not meet [Innovative's] threshold for" admission but had nevertheless been admitted.

Dr. Azoroh testified that Innovative had "submitted all . . . that was required from [it]" and that it did not "have anything outstanding." He noted, in particular, that Innovative submitted financial audits, clean-hands documents, and an updated curriculum in its most recent supplemental responses.

At the conclusion of the public hearing, the Commission proposed to deny Innovative's application because Innovative had failed to comply with the Commission's licensure standards. On December 13, the Commission sent Innovative a notice of intent to deny ("NOID"). It specified the following deficiencies: (1) failure to timely file a complete application, including a $500 late

fee, in violation of 5A D.C.M.R. §§ 8102, 8122; (2) failure to maintain student records and meet certain standards for admissions requirements, in violation of 5A D.C.M.R. §§ 8111, 8117; and (3) failure to include updated curriculum or course syllabi, in violation of 5A D.C.M.R. §§ 8110, 8116.1(l). The notice also informed Innovative of its right to have an evidentiary hearing, which Innovative subsequently requested.

## D. Evidentiary Hearing, Recommendation, and Final Order

The Commission ultimately designated Monique Gudger, an attorney-advisor with the District of Columbia Office of the Attorney General, to serve as the Hearing Officer. The hearing took place over three days. The Commission's sole witness, Deputy Director Terasita Edwards, testified that Innovative's initial application was deficient and that Innovative failed to "correct all deficiencies" even after the Commission requested additional documents. Ms. Edwards testified, among other things, that Innovative's student "records did not consistently" provide current transcripts or grade reports. Nor, according to Ms. Edwards, did Innovative provide "documentation for [student] vaccinations[,] which are required at the time of admission[ ]." Moreover, Innovative's catalog did "not include curriculum information" or course syllabi, which are necessary "so that students are aware as to what the course is, [and] the program hours."

Innovative called two witnesses: Dr. Bonita Jenkins, a Board of Nursing staff member who helped the Commission conduct the virtual site visit, and Dr. Azoroh. Dr. Jenkins testified that, as a Board of Nursing employee, she did not participate in any of the Commission's decisions, including its decision to deny Innovative's application. Nor did Dr. Jenkins know whether Innovative corrected any of the deficiencies in its application. With regard to Board of Nursing standards, however, Dr. Jenkins testified that, based on her review of student records, Innovative was not using the required curriculum certified by the Board of Nursing and that evidence of immunity to communicable disease "was lacking" in the ten sample student records. Dr. Azoroh testified that Innovative was in compliance with respect to all issues raised.

Innovative also sought to introduce annual reports that it had submitted to the Board of Nursing between 2017 and 2020, which, according to Dr. Azoroh, "pertain[ed] to [ ] program[s], enrollments, [and] staffing." The Commission objected to the admission of the reports because they had not been submitted to the Commission, were "not a compliance metric" for licensure renewal for the Commission, and, at any rate, related to a period before 2021. The Hearing Officer declined to admit the annual reports because the reports were "irrelevant and immaterial as they [were] not a measurement of compliance to the Commission's standards for licensure."

On March 14, 2023, the Hearing Officer issued a written decision concluding that Innovative "failed to meet its burden of establishing that it qualified for renewal of its license by satisfying the applicable statutory and regulatory standards as set forth in the" December 13 NOID. In particular, the Hearing Officer concluded that the record supported each of the three bases for the Commission's decision. First, the Hearing Officer, citing 5A D.C.M.R. §§ 8122.2(d) and 8128.3, found that Innovative's application was incomplete because it "failed to include the additional $500 late fee." Second, Innovative "failed to maintain student records" and adhere to appropriate admissions requirements. Specifically, some of Innovative's "student records included documentation for programs in which the student was not enrolled" and "[n]one of the student records contained grade reports." Moreover, Innovative did not conform to applicable Board of Nursing requirements "because it [did] not offer sufficient classroom hours," did not "require students to show proof of vaccination and immunity to communicable diseases," and "admit[ted] students who fail[ed] to meet the school's passing score on its own entrance exams." Third, the Hearing Officer found that Innovative "failed to include updated curriculum as set forth in its revised published academic catalog and failed to provide course syllabi." The Hearing Officer's decision also addressed three "supplemental issues" raised by Innovative, discussed in more detail below. The Hearing Officer recommended that

the Commission issue a final order denying Innovative's application for a licensure renewal.

On June 14, 2023, the Commission adopted the Hearing Officer's findings and recommendation "in full as its final decision" and denied Innovative's renewal application.

## II. Analysis

Innovative raises four arguments in this court: (1) the Commission's decision was not supported by substantial evidence; (2) the Hearing Officer improperly excluded admissible evidence; (3) Innovative had deficient notice of the second ground for denial; and (4) the Commission's unilateral control over the selection of the Hearing Officer conflicts with the federal Administrative Procedure Act ("APA").

We disagree on all fronts and affirm.

### A. Standard of Review

Our review of agency decisions in contested cases is "generally deferential." *Elliot v. D.C. Zoning Comm'n*, 246 A.3d 568, 579 (D.C. 2021). We will affirm an agency decision "so long as (1) [the agency] has made findings of fact on each material contested issue; (2) there is substantial evidence in the record to support

each finding; and (3) its conclusions of law follow rationally from those findings." *Durant v. D.C. Zoning Comm'n*, 65 A.3d 1161, 1167 (D.C. 2013). Innovative, as the party requesting administrative action, had the burden of proof to show, by a preponderance of the evidence, that it satisfied the regulatory requirements for licensure.[3] D.C. Code § 2-509(b); 5A D.C.M.R. § 8133.31.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Acott Ventures, LLC v. D.C. Alcoholic Beverage Control Bd.*, 135 A.3d 80, 88 (D.C. 2016) (internal quotations omitted). Where substantial evidence in the record supports an agency's decision, we will not substitute our judgment for that of the agency "even though there may also be substantial evidence to support a contrary decision." *Aziken v. D.C. Alcoholic Beverage Control Bd.*, 29 A.3d 965, 972 (D.C. 2011) (internal quotations omitted).

---

[3] Innovative argues that the D.C. APA "places [the] burden on the Commission" to "justify denial of renewal." That is incorrect. Under the D.C. APA, "the proponent of a rule or order shall have the burden of proof." D.C. Code § 2-509(b). The D.C. APA defines "order" to include licensing. D.C. Code § 2-502(11); *see also* 5A D.C.M.R. § 8133.31 ("In a hearing resulting from a proposed action to deny a license, the applicant has the burden of satisfying the Commission of the applicant's qualifications by a preponderance of the evidence."); *Haight v. District of Columbia Alcoholic Beverage Control Bd.*, 439 A.2d 487, 493 (D.C. 1981) ("Because this is a contested case, the burden of proving that the license requirements have been met lies with the applicant.").

We review questions of law de novo. *Panutat, LLC v. D.C. Alcoholic Beverage Control Bd.*, 75 A.3d 269, 272 (D.C. 2013).

### B.      Whether Substantial Evidence Supported the Commission's Decision

In adopting the Hearing Officer's findings and recommendation, the Commission denied Innovative's application because Innovative failed to (1) file a complete application, including the $500 late fee, in violation of 5A D.C.M.R. § 8122.2; (2) maintain student records, in violation of 5A D.C.M.R. §§ 8111; 8117; and (3) include updated curriculum or syllabi, in violation of 5A D.C.M.R. §§ 8111; 8166.1(l).

We conclude that substantial evidence supports each of these grounds for denial.[4]

---

[4] Innovative appears to argue that the sole regulation relevant to this litigation is 5A D.C.M.R. § 8122.2, and that its noncompliance with other regulations cannot serve as a basis for the denial of its application. Although Section 8122.2 specifies the information that "[a]n application for renewal . . . shall include," this provision is not the sole basis on which the Commission may deny a license. Rather, licensure is generally "contingent upon said [applicant's] compliance with *all* rules, regulations and criteria promulgated by the Commission." D.C. Code § 38-1302(12) (emphasis added); *see also* 5A D.C.M.R. § 8102.2 (providing that a license will be granted when the Commission determines that the school "complies . . . with all requirements of this chapter"); *District of Columbia v. Am. Univ.*, 2 A.3d 175, 178 (D.C. 2010) (recognizing that licensure is contingent upon compliance with all

### 1.      Late Fee

An applicant wishing to renew its license must submit a timely and complete renewal application package.  5A D.C.M.R. § 8122.  The application "shall include," among other things, "[t]he licensure fees and sureties required" by regulation.  *Id.* § 8122.2(d).  The fee for a license renewal application is $2,500, *id.*, and "[a]n additional fee of five hundred dollars ($500) shall be applied to an application received after the license expiration date," *id.* § 8128.3.[5]  Accordingly, late fees accrued if the Commission received Innovative's renewal application, including all applicable fees, after June 30, 2021.

---

Commission rules and other applicable laws).  Moreover, Section 8122.2 itself contains a catch-all provision under which applicants must provide "[s]uch other information as the Commission may require."

The Commission did not err, therefore, in requiring Innovative to produce, as a condition of licensure, immunization documentation, 17 D.C.M.R. § 9327.11; course syllabi, 5A D.C.M.R. § 8166.1; or other information required by law or regulation.

[5] We note a discrepancy between the Commission's regulations and its form application regarding the date on which late fees would accrue.  The application provides that a late fee will accrue "if [the application is] submitted less than 60 days up to the date of expiration."  The relevant regulation, however, provides that a late fee will "be applied to an application received *after the license expiration date*."  5A D.C.M.R. § 8128.3 (emphasis added).  For purposes of this opinion, we assume that the Commission regulation controls and that a late fee accrued if the Commission received Innovative's application after June 30, 2021, the deadline specified by the Commission in its May 2021 letter.

Innovative argues that it submitted its application on time, "which means that no late fee should be assessed." Innovative cites to testimony that Innovative electronically sent its application on June 30, 2021, and notes that the "paper copy [and] payment" were "received [by] the Commission on July 1, 2021." We conclude that the Commission properly assessed a late fee, which Innovative failed to pay.

There is no dispute that Innovative initially emailed an electronic application on June 30, 2021. But Innovative did not pay its application fee on that date, which it could have done electronically. Without an accompanying payment by June 30, 2021, the electronic application was incomplete. *See* 5A D.C.M.R. §§ 8122.2(d) (providing that a license renewal application "shall include" all "licensure fees"); 8128.2 (specifying a $2,500 application fee for license renewal). Had Innovative electronically paid the application fee when it emailed its initial application, we assume (in the absence of any evidence that the Commission did not accept emailed applications) that its application would have been timely and complete. But because Innovative did not electronically pay the application fee by June 30, 2021, its emailed application was incomplete.

It is also undisputed that Innovative mailed a paper application on June 30, 2021, along with a $2,500 check for the application fee, and that the Commission received it on July 1 at the earliest. Innovative asserts that because it postmarked

the paper application by the June 30 deadline and included the $2,500 application fee, its application was complete and timely. Innovative is incorrect. Because the Commission received the paper application after the June 30 deadline, it was untimely, and a $500 late fee accrued. *See* 5A D.C.M.R. § 8128.3 (providing that a late fee "shall be applied to an application *received* after the license expiration date" (emphasis added)). As with its electronic application, Innovative's failure to pay the required late fee—even after months of additional time and supplemental responses—rendered its paper application incomplete.

The record therefore substantially supports the Commission's determination that Innovative's application was incomplete.[6]

## 2.    Student Records

Postsecondary schools must maintain student records containing specified documents. 5A D.C.M.R. § 8117. Such documents include a "copy of the enrollment contract and other instruments relating to the payment for educational services"; certain "[s]tudent information"; the "[b]asis for admission"; the "date of

---

[6] Innovative points out that it submitted other necessary documents, including a financial report and Certificate of Clean Hands, before the Commission's second public meeting. But an application is incomplete unless it includes all applicable licensure fees, including late fees. *See* 5A D.C.M.R. § 8122.2(d) (providing that a license renewal application "shall include" all "licensure fees").

completion or termination"; and "[c]opies of all correspondence or other records relating to the recruitment, enrollment and placement of the student." *Id.* § 8117.1. Schools must also maintain "[g]rade record[s]" and "descriptions of courses of instruction offered each term." *Id.* §§ 8117.2-.3.

Additionally, because Innovative "provides instruction in a field for which a professional or occupational license is required," it must also meet all applicable requirements of the professional or occupational licensure law, here those specified by the Board of Nursing. 5A D.C.M.R. § 8110.2(e). The Board of Nursing requires institutions such as Innovative to maintain evidence of vaccination or immunity to communicable diseases prior to a trainee's admission. 17 D.C.M.R. § 9631.3(d) ("The record of each trainee shall include . . . [e]vidence of vaccinations or immunity to communicable diseases.").

The Commission, adopting the Hearing Officer's findings and recommendation, determined that Innovative's maintenance of student records was deficient. There is substantial evidence in the record to support the Commission's conclusion. In particular, the Commission's review of the records of ten sample students revealed, among other issues, that (1) "no student records . . . had grade reports on file"; (2) students who were admitted often had failed to meet the school's passing score on its own entrance exams; and (3) records did not show proof of

vaccination and immunity to communicable diseases, as required by the Board of Nursing.

Innovative does not meaningfully challenge any of these findings. It does not point us to any record evidence demonstrating that it kept such documents or otherwise argue that the evidence does not support the Commission's legal conclusion. Innovative simply maintains that "[t]he records were, in fact, in compliance with Commission licensing requirements" without citation to where we might find those records. Such bald assertions cannot carry the day, particularly in light of countervailing evidence. *See* D.C. App. R. 28(a)(10)(A) (petitioner's brief must "contain[ ] the [petitioner's] contentions and the reasons for them, with citations to the authorities and parts of the record on which the [petitioner] relies").

At most, Innovative cites to Dr. Azoroh's testimony—itself conclusory and unspecific—that Innovative was "fully compliant regarding all of the issues raised." But Dr. Azoroh's uncorroborated testimony cannot override the substantial contrary evidence that Innovative's student records were deficient along several metrics. Even if we credited Dr. Azoroh's testimony, substantial evidence would still support the Commission's conclusion that Innovative failed to keep adequate records. *See Johnson v. D.C. Dep't of Health*, 162 A.3d 808, 810-11 (D.C. 2017) ("[W]e must

affirm the [agency's] decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law.").

### 3. Updated Curriculum and Syllabi

Postsecondary schools must have a published catalog that includes a "description of each approved educational service offered." 5A D.C.M.R. § 8116.1(l); *see also id.* § 8122.2(b) (requiring a licensure renewal application to include "[a] copy of the institution's catalogue"). The catalog must include (1) program curricula, *id.* § 8110.2(a), and (2) individual course syllabi,[7] which provide "a written outline [of each course] with examination expectations," *id.* § 8110.2(b).[8] The Board of Nursing separately requires all nurse assistant training programs to use its "approved [ ] model curriculum, that consists of classroom, skills laboratory, and supervised practice hours." 17 D.C.M.R. § 9627.1.

---

[7] According to testimony at the evidentiary hearing, a "course catalog" is "a complete set of policies, procedures, and curriculum that a school provides to students." Syllabi, on the other hand, are "specific to the individual courses that comprise a program and each [syllabus] corresponds to one course."

[8] Although the terms "syllabus" or "syllabi" do not appear anywhere in the relevant Commission regulations, "[e]ach course offered shall have a written outline with examination expectations." 5A D.C.M.R. § 8110.2(b). We read this regulation as mandating course syllabi or an equivalent.

The Commission, adopting the Hearing Officer's findings, concluded that Innovative's catalog "failed to include updated curriculum" and "course syllabi" in violation of 5A D.C.M.R. §§ 8110 and 8116.1(l).

Again, substantial evidence supports the Commission's determination. Although Innovative submitted a "student catalog" on at least three different occasions, none of those catalogs included course syllabi, which are meant to make students "aware as to what the course is, the program hours, . . . [and] the requirements of the program that the students are enrolling in." The Commission's two formal reviews of Innovative's application confirmed as much.[9]

Innovative again relies on Dr. Azoroh's conclusory testimony and asserts, without record citation, that it "included all required curriculum information" and that the evidence "establishes that the required course syllabi were included in [Innovative's] submissions." After our own thorough search of the record, we can find no support for Innovative's assertion that it included the necessary course syllabi or otherwise provided "a written outline [of each course] with examination

---

[9] Although the Commission did not formally review Innovative's final supplemental submission dated December 1, 2021, that submission is similarly defective. Although this final submission included the Board of Nursing's required Nurse Assistant Curriculum, 17 D.C.M.R. § 9627.1, it did not contain any course syllabi or otherwise explain how it would actualize this curriculum through specific course offerings. Nor did Dr. Azoroh testify that Innovative would adopt the Board's recommended curriculum in any specific fashion.

expectations." *Id.* § 8110.2(b). At any rate, "[i]t is not our obligation to comb through the voluminous record in this case to determine whether there is any evidence to support" Innovative's argument. *Belcon Inc. v. D.C. Water & Sewer Auth.*, 826 A.2d 380, 388 (D.C. 2003) (alterations omitted); *see In re Johnson*, 275 A.3d 268, 281 (D.C. 2022) (treating an argument as waived because it consisted of only "vague one-line conclusory assertions").

Innovative also asserts that two of the testifying witnesses—Ms. Edwards and Dr. Jenkins—"read none of [Innovative's] submissions" and merely reiterated the contents of the Commission's December 2021 NOID. It makes sense that Dr. Jenkins—a witness called by Innovative—would not have personal knowledge of Innovative's submissions to the Commission. As noted above, Dr. Jenkins was an employee of the Board of Nursing, not the Commission, and did not participate in any of the Commission's decisions regarding the application. But the record does support Innovative's assertion that Ms. Edwards was not able to testify as to the specific content of Innovative's various submissions and often simply reiterated the Commission's earlier findings.

Nonetheless, we find Ms. Edwards's lack of personal knowledge about Innovative's submissions largely immaterial. The ultimate issue before the Commission was whether *Innovative* had demonstrated, by a preponderance of the

evidence, that it had in fact submitted the required documents in its application and otherwise complied with all other Commission regulations. *See* 5A D.C.M.R. § 8133.31 ("In a hearing resulting from a proposed action to deny a license, the applicant has the burden of satisfying the Commission of the applicant's qualifications by a preponderance of the evidence."). The Hearing Officer (and, by extension, the Commission) had before her all of Innovative's submissions, which plainly lack any course syllabi. The Commission's two formal reviews of Innovative's two initial application submissions—which were also before the Hearing Officer—found the same. Even without considering any of the testimony provided at the evidentiary hearing, these materials amount to substantial evidence supporting the Commission's determination that Innovative failed to include course syllabi or a "written outline [of each course] with examination expectations." 5A D.C.M.R. § 8110.2(b).

## C.    Whether the Commission Committed Legal Error

In addition to challenging whether substantial evidence supported the Commission's denial of its renewal application, Innovative asserts that the Commission committed several legal errors. In particular, Innovative argues that (1) the Hearing Officer erroneously excluded four exhibits that it sought to introduce; (2) a portion of the second charge was "too vague to provide proper

notice"; and (3) "the Commission's control over the selection of the hearing officer is incompatible with full impartiality."

We disagree with all of Innovative's arguments.

### 1. Evidentiary Claim

Innovative contends that the Hearing Officer erred when she excluded four annual reports that Innovative had submitted to the Board of Nursing between 2017 and 2020.

The Hearing Officer excluded the annual reports as "irrelevant and immaterial" because "they are not a measurement of compliance [with] the Commission's standards for licensure." Innovative disagrees, arguing that the documents "[met] the test for admissibility under D.C. Code § 2-509(b)" and "would have demonstrated that [immunization records and compliance] relates to nursing standards only, not education standards, and that [Innovative] certainly is in compliance with such nursing standards."

As best we can tell, these annual reports are not included in the record on review. Nevertheless, Innovative's own description of the reports assures us that the Hearing Officer did not abuse her discretion in excluding the documents, especially in light of our highly deferential review of evidentiary rulings in administrative

hearings. *See District of Columbia v. Pub. Serv. Comm'n*, 802 A.2d 373, 379 (D.C. 2002) ("Given the flexibility of their proceedings and their expertise, administrative agencies are invested with a correspondingly greater discretion than trial judges in determining the admissibility of evidence." (internal quotation omitted)). First, immunization requirements and corresponding documentation do not "relate[ ] to nursing standards only." As noted above, Innovative's programs "provide[ ] instruction in a field for which a professional or occupational license is required," and Commission regulations therefore require it to meet all applicable standards set forth by the Board of Nursing. *See* 5A D.C.M.R. § 8110.2(e). One such standard is that Innovative must maintain evidence of vaccination or immunity to communicable diseases prior to a trainee's admission. *See* 17 D.C.M.R. § 9631.3(d) ("The record of each trainee shall include . . . [e]vidence of vaccinations or immunity to communicable diseases."). Second, Innovative did not attach the annual reports to any of its applications or otherwise timely provide them to the Commission, and seeking to admit them during the evidentiary hearing was too late. Third, the annual reports did not include 2021, the year for which Innovative was renewing its license.

In any event, Innovative does not argue, let alone demonstrate, that it suffered prejudice due to the exclusion. *See Wash. Post v. D.C. Dep't. of Emp. Servs.*, 675 A.2d 37, 43 (D.C. 1996) (an evidentiary error may be a basis for reversal, but

"prejudice must be shown"). Immunization records were but one of several categories of documents that were missing from Innovative's applications and supplements, such as student grade reports. *See supra* Part II.B.2.

We therefore reject Innovative's evidentiary claim.

### 2. Notice Claim

Innovative next argues that a portion of the Commission's second charge was "too vague to provide proper notice . . . of the matter at issue." Specifically, Innovative takes issue with the portion of the Commission's charge that reads: "[Innovative's] admissions policy does not align with the DC Board of Nursing, and therefore, the student records did not include the documents required by [Innovative's] professional regulatory body."

Innovative does not explain in any detail how the Commission's charge "is so vague, with respect to what conduct is either proscribed or required, that persons of common intelligence must necessarily guess at its meaning." *Woods v. D.C. Nurses' Examining Bd.*, 436 A.2d 369, 374 (D.C. 1981). Again, Innovative's conclusory statement that the notice is "vague," without any supporting argument, is a basis to reject its argument. *See Cunningham v. District of Columbia*, 235 A.3d 749, 758 (D.C. 2020) ("Issues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived." (internal quotation omitted)).

### 3.    Bias Claim

Finally, Innovative argues that "the Commission's control over the selection of the hearing officer is incompatible with full impartiality."  In support, Innovative cites to a portion of the federal APA, 5 U.S.C. § 556(b)(3), which provides in relevant part that "[t]he functions of presiding employees and of employees participating in [administrative] decisions . . . shall be conducted in an impartial manner."

The federal APA is inapplicable to administrative proceedings in the District. *See Env't Def. Fund, Inc. v. Mayor-Comm'r of the District of Columbia*, 317 A.2d 515, 517 (D.C. 1974) ("The Federal APA, however, does not apply to the District of Columbia, and therefore cannot control judicial review by this court of either action or inaction of a District of Columbia administrative agency." (footnotes omitted)). Accordingly, Innovative has cited no controlling authority to support its position. Even under the federal APA, however, the selection of hearing officers by the regulating agency is not alone sufficient to demonstrate bias.  *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (starting "from the presumption that the hearing officers who decide [administrative] claims are unbiased" and requiring a petitioner

to show a "conflict of interest or some other specific reason for disqualification"). Assuming that Innovative was owed an impartial hearing officer under our local APA, Innovative gives no specific reason to believe that the Hearing Officer here was biased. *See Ramey v. D.C. Dep't. of Emp. Servs.*, 997 A.2d 694, 698 n.1 (D.C. 2010) (requiring appellant to "point to [some] instance that would suggest that [the ALJ] was biased against him"). The mere fact that the Commission selected a hearing officer without Innovative's input—as is the case in many administrative schemes—cannot alone support Innovative's argument that the Hearing Officer was biased.

### III. Conclusion

For the foregoing reasons, we affirm the Commission's decision and order.

*So ordered.*